**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SAMANTHA CAMDEN, *on behalf of herself and all others similarly situated*,

Plaintiff,

v.

BUCKNELL UNIVERSITY,

Defendant.

No. 4:23-CV-01907

(Chief Judge Brann)

**MEMORANDUM OPINION**

**FEBRUARY 23, 2024**

## I. BACKGROUND[1]

Defendant Bucknell University, located in Lewisburg, Pennsylvania, portrays itself as "pushing the boundaries of undergraduate education and as actively shaping the world outside Lewisburg since 1846" through its "distinct mix of liberal arts and professional programs giving students almost unlimited options to pursue their intellectual interests and passions."[2] At Bucknell, "students explore the ideas and theories they're passionate about . . . in laboratories, residence hall lounges, the local community, and study-abroad programs around the world."[3] This emphasis on "residential education" was interrupted by the COVID-19 pandemic, which forced

1 For the purposes of this Motion, the Court accepts as true the well-pleaded allegations of the Complaint. *Infra* Section II.

2 Compl. ¶ 20.

3 *Id.* ¶ 25.

the school to close the campus, cutting off access to on-campus services, facilities, and extracurricular activities.[4]

Plaintiff Samantha Camden, a citizen of New York, was a student at Bucknell during the Spring 2020 semester, for which she was charged $28,941 in tuition plus a $157 Student Activities Fee.[5] On March 19, 2020, approximately halfway through the semester, which was scheduled to commence on January 13, 2020 and end on May 6, 2020, Bucknell closed the campus due to the COVID-19 pandemic.[6] Camden "does not challenge [Bucknell's] discretion in adhering to federal, state, and local health guidelines, but rather challenges Bucknell's decision to retain the tuition and fees, paid by [Camden] and other students for in-person education, experiences, access to campus, and services, without providing such for the entire duration of the Spring 2020 semester."[7]

Camden initiated this suit on behalf of herself and others similarly situated with the filing of a Complaint against Bucknell asserting state law claims for breach of implied contract and unjust enrichment.[8] Bucknell moved to dismiss the

---

4 *Id.* ¶¶ 15, 31.
5 *Id.* ¶ 15. The Student Activities Fee is also referred to as the Mandatory Fee, *id.* ¶ 68, or simply as the Fee.
6 *Id.* ¶ 15.
7 *Id.* ¶ 12.
8 *See* Compl.

Complaint for failure to state a claim.[9] That Motion is fully briefed and ripe for disposition.[10]

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal for "failure to state a claim upon which relief can be granted." The United States Court of Appeals for the Third Circuit has instructed that, under the standard established by the Supreme Court of the United States in *Bell Atlantic Corp. v. Twombly*[11] and *Ashcroft v. Iqbal*,[12] a court reviewing the sufficiency of a pleading must take three steps: (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they give rise to an entitlement to relief."[13]

## III. ANALYSIS

The facts and legal issues presented by this case are not unique: Camden's counsel alone has brought several similar cases[14] and the Third Circuit recently issued its opinion in *Hickey v. University of Pittsburgh*, a consolidated class-action

---

9 Mot. to Dismiss, Doc. 16.

10 Supp. Br., Doc. 17; Opp'n., Doc. 18. Bucknell did not file a Reply brief.

11 550 U.S. 544 (2007).

12 556 U.S. 662 (2009).

13 *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

14 Baughman Aff., Doc. 17-1 ¶ 3.

in which students of the University of Pittsburgh and Temple University sought "partial refunds of tuition and fees on the grounds that they received a materially different educational experience than they were promised and that they were denied access to on-campus facilities and services for which they paid specific fees."[15] Accordingly, in resolving Bucknell's Motion this Court follows the recently forged, but already well-worn path established by the Third Circuit and other courts to have addressed essentially identical issues.[16]

### A. Breach of Contract

"As a general matter, in Pennsylvania, '[a] contract implied in fact is an actual contract which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from acts in the light of the surrounding circumstances.'"[17] In the university context, "Pennsylvania courts have recognized that students may bring breach of contract claims for 'specific undertakings' that a university promised but failed to deliver, such as a certain

---

15 81 F.4th 301, 305 (3d Cir. 2023).

16 As Camden notes, several other Circuit Courts of Appeals "have similarly found that student-plaintiffs in this context plausibly allege a breach of contract and, in the alternative, unjust enrichment." Opp'n. 5 n.3 (citing *Rynasko v. New York Univ.*, 63 F.4th 186, 201 (2d Cir. 2023); *Shaffer v. George Washington Univ.*, 27 F.4th 754, 765 (D.C. Cir. 2022); *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 885 (7th Cir. 2022); *Jones v. Admin'rs of Tulane Educ. Fund*, 51 F.4th 101, 116 (5th Cir. 2022)). *But see Burt v. Board of Trs. Of Univ. of R.I.*, 84 F.4th 42, 54-56 (1st Cir. Oct. 13, 2023) (affirming grant of motion to dismiss and holding that defendant university was discharged of its obligation to perform, and it was not unjust for it to retain the tuition payments since they continued to provide an education in an alternative format).

17 *Hickey*, 81 F.4th at 310 (quoting *Elias v. Elias*, A.2d 215, 217 (Pa. 1968)).

curriculum, accreditation, or degree."[18] However, "not every benefit touted by a university gives rise to a contractual commitment."[19]

Bucknell acknowledges that this Court is bound to follow *Hickey* and, thus, at this stage, concedes that an implied contract was formed between Camden and Bucknell.[20] Instead, Bucknell argues that Camden "accepted Bucknell's proposed modification to that agreement by continuing to attend classes remotely and accepting academic credits for classes taken remotely when in-person instruction became impossible."[21] Bucknell suggests, and the Court agrees, that when Pennsylvania Governor Tom Wolf ordered "the closure of all businesses that are not life sustaining," it became legally impossible for Bucknell to perform its obligations under the contract.[22] "There is appended to all contracts an implied condition that after the making of the agreement, no law or governmental regulation will be enacted rendering continued performance of the contract unlawful. Therefore, where without fault of the party his continued performance of a contract is rendered illegal by a

---

18 *Id.* at 311 (citing *Gati v. Univ. of Pittsburgh of Com. Sys. of Higher Educ.*, 91 A.3d 723, 731 (Pa. Super. 2014); *McCabe v. Marywood Univ.*, 166 A.3d 1257, 1262 (Pa. Super. 2017)).

19 *Id.* at 313.

20 *Cf.* Supp. 6 n.5 (acknowledging *Hickey* but reserving right to challenge that decision as contrary to Pennsylvania law); *id.* at 6-7 (assuming *arguendo* that an implied contract existed).

21 *Id.* at 7.

22 *Id. See also Ord. of the Gov. of the Commw. of Penn. Re: the Closure of All Bus. That Are Not Life Sustaining*, Doc. 17-2. The Court may take judicial notice of state executive orders. *Clark v. Gov. of New Jersey*, 53 F.4th 769, 772 n.5 (3d Cir. 2022) (citing *Union Cnty. Jail Inmates v. Di Buono*, 713 F.2d 984, 988 n.4 (3d Cir. 1983)).

subsequent governmental regulation, his duty of rendering performance is discharged."[23]

However, the Court also agrees with Camden that "the defense of impossibility at most only excuses *performance* of a contract."[24] It does not entitle the party who had been obliged to perform—Bucknell—to retain the benefit provided by the other party—Camden's tuition.[25] Camden has alleged that "Bucknell saved significant sums of money" by switching formats,[26] which the Court must accept as true on a motion to dismiss.[27]

Bucknell asserts that, when it became unlawful to provide in-person classes, the parties could either rescind the contract—shut down the university completely—or amend the contract to provide for alternative teaching arrangements.[28] Bucknell offered the latter, and argues that Camden, "by continuing to attend classes and earn academic credits towards her degree accepted."[29]

---

23 *Burkus v. Henshall*, 126 A.2d 722, 725 (Pa. 1956); *accord Kasemer v. Nat'l Fuel Gas Distribution Corp.*, 433 A.2d 851, 851 (Pa. 1981); *Burt v. Bd. of Trustees of U. of Rhode Island*, 84 F.4th 42, 54-56 (1st Cir. 2023).

24 Opp'n. 7 (emphasis supplied) (citing *Prusky v. Reliastar Life Ins. Co*., 445 F.3d 695, 700-01 (3d Cir. 2006)).

25 *Ninivaggi v. Univ. of Delaware*, 555 F. Supp. 3d 44, 53 (D. Del. 2021) (Bibas, J., circuit judge, sitting by designation); *accord Meng v. New Sch.*, No. 23-CV-3851(JSR), --- F. Supp. ----, 2023 WL 5162181, at *5 (S.D.N.Y. Aug. 11, 2023)).

26 Opp'n. 7 n.7 (quoting Compl. ¶¶ 77-78).

27 *Ninivaggi*, 555 F. Supp. 3d at 53.

28 Supp. 8.

29 *Id.*

Under Pennsylvania law, a contract "may be modified by subsequent agreement through words, written or oral, or by conduct of the parties."[30] Acceptance of a modification "may be implied from a course of conduct in accordance with its existence"[31] after notice of the impending modifications and an opportunity to accept or reject it.[32] The Court is not persuaded that Bucknell's March 10, 2020 announcement that, beginning March 19, 2020, the remainder of the spring semester would be taught remotely allowed Camden a reasonable opportunity to reject the purported modification.[33] At best, whether Camden waived her right to seek a tuition refund is a question of fact which this Court cannot resolve on a motion to dismiss.[34]

Bucknell's argument also fails for a more fundamental reason: Camden had already paid the full tuition and fees due for the Spring 2020 semester.[35] Bucknell suggests that "[i]f indeed, the deprivation of an in-person learning environment was a breach of a material term of the alleged implied agreement, [Camden] could have elected to rescind the agreement and wait until the COVID-19 restrictions were lifted

---

30 *In re Labrum & Doak*, No. CIV. A. 98-4780, 2000 WL 1204646, at *7 (E.D. Pa. Aug. 23, 2000) (collecting cases).

31 *U.S. v. LeCroy*, 348 F. Supp. 2d 375, 384 (E.D. Pa. 2004).

32 *Corsale v. Sperian Energy Corp.*, 374 F. Supp. 3d 445, 454 (W.D. Pa. 2019), *aff'd,* 819 Fed. Appx. 127 (3d Cir. 2020). *See also* Restatement (Second) of Contracts § 69(1)(a) (silence and inaction operate as acceptance where offeree takes benefit of offered services with reasonable opportunity to reject them).

33 Compl. ¶ 37.

34 *See Sabatini v. Its Amore Corp.*, 455 Fed. Appx. 251, 256 (3d Cir. 2011) ("Ordinarily, the question of waiver is a question of fact for a jury."); *accord Meng*, 2023 WL 5162181, at *6; *Miranda v. Xavier U.*, 594 F. Supp. 3d 961, 972 (S.D. Ohio 2022); *Mooers v. Middlebury College*, No. 2:20-CV-00144, 2021 WL 4225659, at *8 (D. Vt. Sept. 16, 2021).

35 Compl. ¶ 7.

before resuming [her] degree program."[36] But what of the $29,000 Camden already paid to Bucknell for the Spring 2020 semester? Bucknell offers no meaningful argument regarding the benefit it had already received from Camden, but rather invites the Court to assume that Camden could have either received a refund in March 2020 or a credit towards a future semester after in-person classes resumed. No such option is apparent from the Bucknell's briefing, let alone the Complaint.

**B. Unjust Enrichment**

"Pennsylvania law supports two species of unjust enrichment claims: '(1) a quasi-contract theory of liability, in which case the unjust enrichment claim is brought as an alternative to a breach of contract claim; or (2) a theory based on unlawful or improper conduct established by an underlying claim, such as fraud, in which case the unjust enrichment claim is a companion to the underlying claim.'"[37] Camden's claims are of the former species, and as her breach of contract claim cannot be resolved at this stage, it would be premature to dismiss her claim for unjust enrichment.[38]

Further, Bucknell's argument that Camden's unjust enrichment claim should be dismissed because Bucknell did not unjustly retain any payment received from

---

[36] Supp. 11.

[37] *Mifflinburg Telegraph, Inc. v. Criswell*, 277 F. Supp. 3d 750, 801 (M.D. Pa. 2017) (quoting *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 492 (E.D. Pa. 2016)).

[38] *See Woolley v. Groft*, 653 F. Supp. 3d 171, 186 (M.D. Pa. 2023) (denying summary judgment on unjust enrichment claim where underlying issue of breach of contract remained unresolved).

Camden is foreclosed by the Third Circuit's decision in *Hickey*. "To state a claim for unjust enrichment under Pennsylvania law, a plaintiff must allege that (1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated that benefit; and (3) the defendant retained the benefit under circumstances where it would be inequitable to do so without payment of value."[39] Ignoring the clear holding of *Hickey*, Bucknell argues that Camden fails to satisfy the third element because she was the one who paid value for a service and that she received a service in return, even if it was not the service she anticipated.[40] To the extent that Bucknell argues that the doctrine of unjust enrichment is only available to plaintiffs who have performed, rather than paid for services, that argument is not well taken.[41] Just as in *Hickey*, Camden has adequately alleged that Bucknell "retained considerable cost savings—at [Bucknell] Students' expense—by transitioning to remote learning."[42]

### C. Tuition vs. Student Activity Fee

Bucknell suggests that, even if an implied contract to provide an "on-campus experience" exists, that experience was covered by the Student Activity Fee, not the tuition.[43] As described in the Complaint, the Fee covered "on-campus services and

---

39 *Hickey*, 81 F.4th at 316 (citing *WFIC, LLC v. LaBarre*, 148 A.3d 812, 819 (Pa. Super. Ct. 2016)).

40 Supp. 14-15.

41 *See Parsons v. City of Philadelphia*, No. CIV.A. 13-0955, 2014 WL 6973024 (E.D. Pa. Dec. 9, 2014) (denying motion to dismiss unjust enrichment class action claim brought by plaintiff who alleged she had overpaid for parking).

42 *Hickey*, 81 F. 4th at 316; Compl. ¶¶ 77-78.

43 Supp. Section V.C.

facilities" such as "access to student health and wellness facilities, programs or services; studios and study spaces; fitness facilities; and student events."[44] However, the Fee does not, as Bucknell suggests, cover the entirety of the "on-campus experience" that is the subject of Camden's claims. Camden's Complaint makes clear that she claims "Bucknell breached its contracts . . . by failing to provide the promised in-person and on-campus educational experience *as well as* the services and facilities to which the Mandatory Fee pertained throughout the Spring 2020 semester."[45] While claims to tuition and other fees may be distinct, Camden's Complaint is sufficient to state a claim for breach of contract as to both.[46]

## IV. CLASS ACTION FAIRNESS ACT

"[B]ecause subject matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt."[47] Therefore, courts must necessarily be able "able to raise *sua sponte* subject-matter jurisdiction concerns."[48] The Class Action Fairness Act of 2005 (CAFA)[49] confers jurisdiction on federal courts over class actions "in which the amount in controversy exceeds $5,000,000 in the aggregate, any class member and any defendant are

44 Compl. ¶¶ 35, 39.

45 *Id.* ¶ 68 (emphasis added).

46 *See Hickey*, 81 F.4th at 314 (evaluating claims for tuition and mandatory fees separately and finding students had stated a claim as to both).

47 *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76-77 (3d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 278 (1977)).

48 *Id.* at 77.

49 Class Action Fairness Act of 2005, Pub.L. No. 109–2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.).

citizens of different states, and there are at least 100 members in the putative class."[50] "In order to determine whether the CAFA jurisdictional requirements are satisfied, a court evaluates allegations in the complaint."[51] As Bucknell has not contested jurisdiction under CAFA, the Court asks only "whether it is clear to a legal certainty that the plaintiff cannot recover the amount claimed."[52]

Camden brings her case on behalf of herself, and a Class defined as:

> All Bucknell University students who satisfied their payment obligations for the Spring Semester 2020 tuition and/or Mandatory Fees and enrolled in at least one in-person on-campus class.[53]

Excluded from the Class are "all students who received full Bucknell-funded scholarships for the Spring 2020 semester," as well as any employees and other persons or entities related to or affiliated with Bucknell or its officers.[54] Even after removing students who received full Bucknell-funded scholarships and those who are either employees or related to employees of the University, the group that is left will undoubtedly be sufficient to establish numerosity.

However, the failure to better plead the size of the proposed Class precludes the Court from determining whether the amount in controversy requirement has been satisfied. As Bucknell has not contested jurisdiction, the Court need only satisfy

---

50 *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 149 (3d Cir. 2009) (citing 28 U.S.C. §§ 1332(d)(2), (d)(6), (d)(2)(A), (d)(5)(B)).

51 *Judon v. Travelers Prop. Cas. Co. of Am.,* 773 F.3d 495, 500 (3d Cir. 2014).

52 *Id.* at 505.

53 Compl. ¶ 52.

54 *Id.* ¶ 53.

itself that it is not clear to a legal certainty that the Class could not recover at least $5,000,000. Aside from the size of the class, and a conclusory allegation that "the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs," Camden's Complaint is largely silent on just what she seeks to recover.[55] She concedes that she is not entitled to a refund of her entire Spring 2020 tuition.[56] She also appears to acknowledge that the education she received after the school ceased in-person instruction is not valueless.[57]

The Court is mindful that conclusory allegations regarding the amount in controversy made in good faith are adequate to establish jurisdiction.[58] To be sure, the Court does not believe the assertion was made in bad faith. Rather, based on the Complaint, it appears to the Court that Camden (nor Bucknell for that matter) did not give much thought to the issue at all.

Camden alleges that the median student loan debt for Bucknell graduates is $27,000, or approximately $3,375 per semester.[59] For the sake of highlighting the potential jurisdictional issue, the Court posits that the Class received the entire benefit of their tuition for the first half of the semester and half of that benefit for the

---

55 Compl. ¶ 17.

56 *Cf. id.* ¶ 40 (noting that Bucknell provided prorated refunds for residence hall rooms and dining plans, but not tuition and the Mandatory Fee).

57 *Cf. id.* ¶ 43 n.20 (alleging that the Class members could have secured a comparable online only education "at significantly cheaper prices"). Whatever "significantly cheaper" means, it does not mean free of charge.

58 *Polanco v. Amguard Ins. Co.*, No. CV 18-0331-CFC, 2018 WL 6380707, at *3 (D. Del. Dec. 6, 2018).

59 Compl. ¶ 41.

second half, entitling the Class to recover one quarter of the tuition paid to Bucknell: approximately $843.[60] To meet the $5,000,000 threshold, the Class would need to include approximately 4,562 students.[61] There are approximately 3,700 undergraduate students at Bucknell.[62]

The Court recognizes that the above does not include tuition paid out of pocket, which may well push the amount in controversy past the threshold. The Court also expects that Camden believes she may be entitled to recover more than one quarter of her Spring 2020 tuition. However, the Court also recognizes that financed educational expenses include those which are not at issue here, such as living expenses.[63] Ultimately, the Court can only speculate as to the impact of any

---

[60] The Court recognizes that the median debt is not the average debt for graduates. This is merely the figure alleged in the Complaint.

[61] Assuming legal fees of 30%, *Neale v. Volvo Cars of N.A., LLC*, 794 F.3d 353, 357 n.1 (3d Cir. 2015), the aggregate damages must come to approximately $3.85 million. That amount divided by $843 comes to 4,652.

[62] U.S. Dept. of Educ., *Bucknell University College Scorecard*, (last visited Feb. 21, 2024), https://collegescorecard.ed.gov/school/?211291-Bucknell-University&fos_code=2607&fos_credential=3. The Court may take judicial notice of information contained on the website of a governmental agency. *Landair Transp., Inc. v. Del's Truck & Auto Repair*, No. 1:17-CV-0723, 2018 WL 950208 at *2 n.1 (M.D. Pa. Feb. 20, 2018) (citing *Abulkhair v. Comm'r of Soc. Sec.*, 450 F. App'x. 117, 119 n.3 (3d Cir. 2011); *accord Morgan v. Pennsylvania*, No. 4:23-CV-00872, 2023 WL 6461245 at *3 (M.D. Pa. Oct. 2, 2023) (citing *In re Google Inc.*, 806 F.3d 125, 133 n.12 (3d Cir. 2015). *See also Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017)). The Court notes that this figure is for a more recent academic year and includes those students who would be excluded by the proposed Class.

[63] *Cf.* Compl. ¶ 40 (observing that Bucknell provided prorated refunds for residence hall rooms and dining hall plans).

of these factors on the amount in controversy. Limited to the allegations of the Complaint, it appears to a legal certainty that the amount in controversy falls short.[64]

The question becomes then, what is the proper path forward? The Court could *sua sponte* dismiss the Complaint without prejudice for lack of subject matter jurisdiction. To do so would require the Court to deny Bucknell's Motion to Dismiss as moot as the prohibition of advisory opinions would preclude the Court from reaching the merits of that Motion.[65] Assuming Caldwell files an amended complaint, the parties would then be required to relitigate Bucknell's Motion. Alternatively, the Court may direct the parties to conduct targeted jurisdictional discovery.[66] Though it is Camden's burden to allege facts in support of jurisdiction, "courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'"[67]

In the interest of judicial economy, the Court opts for the latter. "The facts relevant to jurisdiction"—the size of the Class, the tuition paid by the Class, and the value of the claimed loss—"are also central to class certification and the merits of

---

64 Assuming a class of 3,700 students, the amount in controversy, including legal fees, would appear to be $4.05 million, nearly $1 million short of CAFA's jurisdictional threshold.

65 *See In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 422 (3d Cir. 2013) (discussing prohibition of advisory opinions).

66 *Judon*, 773 F.3d at 509 ("[T]he District Court 'has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction.'") (quoting *Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 756 (3d Cir. 1995)).

67 *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003) (citing *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n,* 107 F.3d 1026, 1042 (3d Cir.1997)); *accord Smith v. HSN, Inc.*, No. CV2012869KMESK, 2020 WL 7022640, at *7 (D.N.J. Nov. 30, 2020) (collecting cases).

the claims. Whether in federal or state court, this discovery will be required."[68] Further, this discovery will facilitate a determination of whether a class should be certified "[a]t an early practicable time" as required by Federal Rule of Civil Procedure 23.[69] Therefore, it is the preference of the Court that the jurisdictional determination be placed on a firm factual footing now.[70]

Accordingly, the Court will direct the parties to confer and advise the Court in an addendum to the joint case management plan required by the Federal Rules of Civil Procedure and Local Rule 16.3 regarding their views of how to best approach targeted jurisdictional discovery. An initial case management conference will be scheduled by separate Order.

## V. CONCLUSION

For the foregoing reasons, Defendant Bucknell University's motion to dismiss is denied. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

68 *Smith* 2020 WL 7022640, at *7 (quoting *Lee v. C. Parking Corp.*, No. 2:15-CV-0454 KM MAH, 2015 WL 4510128, at *2 (D.N.J. July 24, 2015)).

69 Fed. R. Civ. P. 23(c)(1)(A). The Court notes that, if a class is not certified, the Court will necessarily not have jurisdiction over Camden's individual claims, as the amount in controversy would fall well short of $75,000. Thus, it seems this is a matter in which bifurcated discovery is appropriate, regardless of the size of the purported Class or the claimed damages.

70 *Smith* 2020 WL 7022640, at *7 (quoting *Lee*, 2015 WL 4510128, at *2).